Gaylon Joe PENICK, Appellant,

v.

Cecil CHRISTENSEN, M.D., Pfizer Hospital Group, Inc., and Pfizer Inc., Appellees.

No. 14–94–00209–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 5, 1995.

Rehearing Overruled Jan. 4, 1996.

John H. Holloway, Houston, for appellant.

Jay H. Henderson, Houston, Jack Urquhart, Houston, James Moore, Houston, John R. Strawn, Jr., Houston, for appellees.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

AMIDEI, Justice.

This appeal is from a take nothing judgment after a partial summary judgment and jury trial in a medical malpractice and product liability action. Appellant, Gaylon Joe Penick ("Penick"), sued Dr. Cecil Christensen ("Dr. Christensen") and Pfizer Hospital Products Group, Inc. and Pfizer Inc. ("Pfizer"), appellees, for damages related to hip replacement surgery performed by Dr. Christensen. We affirm in part and reverse and remand in part.

Penick had broken his right hip in an automobile accident in 1958, and developed an osteoarthritic condition in the hip. Dr. Christensen, a board certified orthopedic surgeon, first saw Penick on July 7, 1983. Two weeks before this visit, Penick re-injured his hip stepping out of a boat. He complained to Dr. Christensen of intense pain, had a restricted range of motion, and used crutches or a cane to walk. He was taking the maximum recommended daily dosage of Vicodin, a strong narcotic pain medication. X-rays confirmed deterioration of the hip from arthritis. Dr. Christensen recommended that Penick consider hip replacement surgery. On July 11, 1983, Penick notified Dr. Christensen he had decided to go ahead with the surgery. Dr. Christensen performed a total hip replacement on Penick at Park Plaza Hospital in Houston on July 19, 1983. During this procedure, portions of the hip and leg bone were removed, and a metal device was inserted in the upper leg bone. A plastic "cup" was inserted in the hip socket area and was secured by a cement-like plastic product, marketed under the name "Simplex."

Penick's follow-up visit about one month after surgery indicated normal progress and healing. Penick complained of slight pain, but the pain may have been sciatic pain related to his five previous back surgeries. He walked well and had a good range of motion. Post-operative x-rays showed excellent results. Penick complained, however, that his right leg appeared to be longer than the left. Penick was unhappy with Dr. Christensen's advice that he would get used to the perceived difference. He disagreed with the doctor's explanation that his legs were of equal length, but his right leg had been shorter before the operation due to bone loss from the arthritis.

After this one follow-up visit to Dr. Christensen, Penick sought further care from an orthopedic surgeon in San Antonio, Dr. Arvo Neidre, who had previously operated on Penick's back. Penick complained of pain and was referred to another surgeon in San Antonio, Dr. John A. Evans. Dr. Evans had x-rays of the hip taken and suspected that the artificial hip was loose. Dr. Evans, with Dr. Neidre assisting, performed remedial surgery in October 1983, replacing the artificial hip with another. Penick continued to experience pain and suffered from infections. He also fell and injured the hip. Between 1983 and 1989 he underwent numerous surgeries on his hip and ultimately had the artificial device removed. As a result, Penick has no right hip joint.

In his suit, Penick claimed Dr. Christensen negligently recommended unnecessary surgery and negligently performed the surgery by improperly seating the cup to the hip, including negligently preparing and applying the Simplex cement. Penick also contended he was not fully advised of the potential risks and complications associated with the sur-

gery, and therefore the surgery was performed without his informed consent.

Penick alleged Pfizer manufactured, sold and distributed the Simplex cement, which he claimed was defective and caused the artificial hip to become loose. On March 30, 1989, the trial court granted partial summary judgment in favor of Pfizer, and denied severance of that claim.

The case proceeded to a jury trial on Penick's claims against Dr. Christensen. The jury found against Penick on both liability and damages, and a take nothing judgment was signed November 5, 1993. Penick now appeals both judgments, raising twenty-one points of error.

## SUMMARY JUDGMENT

In Penick's first two points of error, he contends the trial court erred in granting summary judgment for Pfizer because Pfizer failed to establish its entitlement to judgment as a matter of law and material fact issues were raised in his response. Penick contends that Pfizer did not establish as a matter of law that the Simplex cement had not failed to perform its intended purpose to bond the prosthesis to the hip bone, or that this failure was not a producing cause of Penick's injuries. He also contends Pfizer failed to negate its liability based on actual or implied warranty under product liability law.

The rules to be followed in reviewing a summary judgment are well established:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

A defendant moving for summary judgment must establish as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). Once the defendant has produced competent proof to negate a necessary element of the plaintiff's cause of action, the burden shifts to the plaintiff to introduce evidence that raises a fact issue with respect to the element negated by the defendant's summary judgment proof. *Goldberg v. United States Shoe Corp.,* 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied).

■ To succeed on a strict product liability theory, a plaintiff must establish: (1) the defective and unreasonably dangerous condition of the defendant's product; and (2) a causal connection between such condition and the plaintiff's injuries or damages. *Lucas v. Texas Indus., Inc.,* 696 S.W.2d 372, 377 (Tex.1984). A product may be proven to be defective if it is unreasonably dangerous in construction, as designed, or because of inadequate warnings or instructions. *Id.* It is plaintiff's burden to prove that the defective condition existed at the time the product left the control of the manufacturer. *Dura–Stilts Co. v. Zachry,* 697 S.W.2d 658, 663 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *V. Mueller & Co. v. Corley,* 570 S.W.2d 140, 143 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.).

■ Pfizer's summary judgment motion did not address causation; it argued only that there was no defect in the cement. In support of its motion, Pfizer provided as proof excerpts from the depositions of Penick and Dr. Christensen. Penick testified that no one ever told him that anything was wrong with the cement used in his surgery. Dr. Christensen testified that the cement used during Penick's surgery was "state of the art" and that he saw no evidence that there was anything wrong with the cement. Dr. Christensen further testified that he had all of the instructions and warnings that he needed to properly use the cement. Pfizer argued that this testimony negated any cause of action based on a manufacturing or design defect, or failure to warn or instruct the physician about the product. Pfizer concluded that because the suit had been on file for three years and no evidence of any defect

was adduced after the only two physicians who saw the cement had been deposed, it was entitled to judgment as a matter of law.

Summary judgment may be upheld on the uncontroverted testimony of an interested witness "if the evidence is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *Republic Nat'l Leasing Corp. v. Schindler,* 717 S.W.2d 606, 607 (Tex.1986); REV.R.CIV.P. 166a(c). The testimony of an interested expert witness can support summary judgment as long as it meets the requirements of Rule 166a, even if that expert is a party to the suit. *Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991).

■ However, Dr. Christensen's testimony that the cement was "state of the art" does not entitle Pfizer to judgment as a matter of law. In balancing the overall risk and utility of a product, the fact finder in a product liability suit may consider the availability or nonavailability of feasible alternatives. *Owens–Corning Fiberglas Corp. v. Caldwell,* 818 S.W.2d 749, 752 (Tex.1991). Asserting that a product is "state of the art," however, is not a true defense or bar to recovery in a product liability action. *Id.; Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 749 n. 3 (Tex.1980). As Penick points out, even a good product can include a "bad apple."

Dr. Christensen's statement that he had seen no evidence that "anything was wrong or different about this cement" also does not conclusively establish that there was no defect present. The only other proof offered by Pfizer was Penick's statement that he had not been told of a defect. Penick's testimony does not prove that no defect was present. While we sympathize with Pfizer's argument that after suit had been on file for over three years, Penick should have obtained proof of any defect, the law does not provide for summary judgment for a defendant unless it conclusively negates an element of the plaintiff's cause of action. We cannot shift the burden to require Penick to prove his case at the summary judgment stage.

■ Moreover, Penick provided summary judgment proof through the deposition testimony of Dr. Christensen and Dr. Evans that the loosening of the cup could have been caused by several different happenings: an infection, a fall, improper seating of the cup during surgery, or a mechanical failure of the cement to properly bond. Dr. Christensen and Dr. Evans testified that, based on reasonable medical probability, the cup can become loose because the cement fails to bond. Penick argues that while the exact cause of the loosening was not conclusively established before summary judgment, neither was a defect in the cement conclusively negated. When different causes of an injury are possible, a fact question exists. *Goodnight v. Phillips,* 418 S.W.2d 862, 865 (Tex. Civ.App.—Texarkana 1967, writ ref'd n.r.e.) (fact question existed where several different events could have caused loss of blood supply after surgery resulting in removal of testicle).

We conclude that Pfizer failed to establish that it was entitled to judgment as a matter of law, and we sustain points of error one and two.

## CONSTITUTIONALITY OF STATUTORY INFORMED CONSENT PROCEDURE

In points of error five and six, Penick raises several constitutional challenges to the statutory procedures for obtaining a patient's informed consent to medical care or surgery. He claims there is no compelling state interest for establishment of a disclosure panel which restricts a patient's right to be fully informed of all risks of treatment.

■ When we review the constitutionality of a statute, we must presume that the statute is valid. *H.L. Farm Corp. v. Self,* 877 S.W.2d 288, 290 (Tex.1994). The party challenging the constitutionality of a statute bears the burden of establishing its unconstitutionality. *Raitano v. Texas Dept. of Public Safety,* 860 S.W.2d 549, 550 (Tex.App.— Houston [1st Dist.] 1993, writ denied).

Texas common law imposed an obligation upon physicians to reasonably communicate to the patient any material risks or hazards involved in a medical or surgical procedure to obtain the patient's informed consent. *Scott*

*v. Wilson,* 396 S.W.2d 532, 533 (Tex.Civ. App.—San Antonio 1965), *aff'd,* 412 S.W.2d 299 (Tex.1967). The common law focused on the *physician,* rather than the patient, in setting legal standards to measure the reasonableness of a physician's disclosure or nondisclosure to the patient. *Wilson v. Scott,* 412 S.W.2d 299, 301 (Tex.1967). Plaintiffs were required to prove through medical expert opinion what alternative treatment and risks a reasonable medical practitioner would have disclosed to the patient under the same or similar circumstances in the same or similar community. *Hood v. Phillips,* 554 S.W.2d 160, 166 (Tex.1977). Thus, the medical community itself set the standard of care for the quality or quantity of information about alternative treatment and risk disclosures for purposes of obtaining informed consent. This standard could be established by the sole testimony of a defendant physician, when qualified as an expert. *See, e.g., Scott,* 396 S.W.2d at 534.

Recovery for a claim that a doctor failed to fully inform a patient of the risks of surgery is now governed by the Medical Liability and Insurance Improvement Act ("the Act"). TEX.REV.CIV.STAT.ANN. art. 4590i, § 6.02 (Vernon Supp. Pamph. 1995). The Act created the Texas Medical Disclosure Panel ("the Panel") to determine which risks and hazards must be disclosed to patients undergoing medical care and surgical procedures. *Id.* at § 6.03(a). The Panel is composed of nine members, three attorneys and six physicians, to be selected by the Commissioner of Health. *Id.* at § 6.03(c). The Panel prepares two separate lists of those medical treatments and surgical procedures that do and do not require disclosure of risks. *Id.* at § 6.04(b). For those treatments or procedures requiring disclosure, the Panel establishes the degree of disclosure required and the form in which it will be made. *Id.* Disclosure of risks in compliance with the statute creates a rebuttable presumption that the physician was not negligent. *Id.* at § 6.07(a)(1). Likewise, failure to disclose when required creates a rebuttable presumption that the doctor was negligent. *Id.* at § 6.07(a)(2).

The Texas Supreme Court addressed the Act's changes in the procedures for obtaining and reviewing consent in *Peterson v. Shields,* 652 S.W.2d 929 (Tex.1983). For medical care and surgical procedures performed after enactment of the Act in 1977, it is no longer necessary to provide expert testimony regarding the standard of care in any certain community. The Act replaces the common law locality rule with a "reasonable person" rule. *Id.* at 930–31. The creation of the Panel also eliminates the need for expert medical testimony regarding the materiality of the risk in most cases. In those cases where the Panel has not made a determination of the type of disclosure required, the Act provides that the physician is under the "duty otherwise imposed by law." The Supreme Court held that this duty is the same duty imposed in section 6.02 of the act: "to disclose all risks or hazards which could influence a reasonable person in making a decision to consent to the procedure." *Id.* at 931.

Penick places reliance on the Texas Supreme Court's expression of the legislative intent behind the Act in *Barclay v. Campbell,* 704 S.W.2d 8 (Tex.1986). The Court held that "it was not the legislature's intent to take away an individual's right to make such decisions [as to acceptance of the risks inherent in medical treatment] for himself just because his doctor does not believe his patient reasonable." *Id.* at 10. However, the *Barclay* opinion is not helpful to the constitutional issues before us. First, the medical treatment at issue in *Barclay* was not one for which the Panel had determined the risks to be disclosed, and the Court held that the question of informed consent should have been submitted to the jury. *Id.* at 9. Secondly, the Court's discussion concerned a doctor's failure to disclose risks to a patient with mental illness. The Court directed that an objective, reasonable person standard should be applied, instead of the doctor's imposition of a subjective standard based on the patient's inability to make a reasonable decision because of his schizophrenia. *Id.* at 10–11.

Penick raises numerous constitutional attacks against the Act's procedures for obtaining informed consent, primarily complaining

about the Panel's determination of the risks to be disclosed.[1] In his sixth point of error, Penick contends the trial court erred in holding that the statutory disclosure panel's determination of surgical risk is constitutional. In point five, he argues the court erred in overruling his objections to the instructions on informed consent because the statute's creation of a Panel to determine risks is unconstitutional. Penick argues that the statute unreasonably restricts and deprives individual patients and the public of their freedom and right to know "all risk factors and alternatives of medical treatment" so as to have sufficient information to make an "intelligent and fully informed decision" as to what risks they will accept.

While the Texas Constitution contains no express guarantee of a right of privacy, it contains several provisions similar to those in the United States Constitution that have been recognized as implicitly creating protected "zones of privacy." *Texas State Employees Union v. Texas Dep't of Mental Health and Mental Retardation*, 746 S.W.2d 203, 205 (Tex.1987). These protected zones of privacy impose restraints on unwarranted governmental interference in individual autonomy rights, that is, the freedom to determine for oneself whether to undergo certain experiences or to perform certain acts. *Industrial Found. of the South v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 679 (Tex.1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977). Thus, the Texas Supreme Court has held that the Texas Constitution protects personal privacy from unreasonable intrusion. *Texas State Employees Union*, 746 S.W.2d at 205.

This right to privacy should yield only when the government can demonstrate that an intrusion is reasonably warranted for the achievement of a compelling governmental objective that can be achieved by no less intrusive, more reasonable means. *Id.* A person's right to choose medical treatment is encompassed in this right of personal priva-cy. *Cf. Roe v. Wade*, 410 U.S. 113, 153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). Penick suggests that we should therefore apply a compelling state interest test in analyzing the constitutionality of the Act. We disagree.

Even though informed consent is generally dependent on the information the physician discloses, individual rights are not infringed by the Panel's imposition of minimum requirements for disclosure. True consent to what should be done to one's own body is the informed exercise of a choice, which entails an opportunity to evaluate knowingly the options available and the risks attendant on each option. *Karp v. Cooley*, 493 F.2d 408, 419 (5th Cir.), *cert. denied*, 419 U.S. 845, 95 S.Ct. 79, 42 L.Ed.2d 73 (1974). However, only *material* risks need be disclosed; a physician cannot be expected to disclose *all* risks, including those for which the risk is so minimal that it would not influence a reasonable person's decision.

The disclosures provided by statute are governed by the same standard as under common law: a patient is entitled to know those risks that could influence a reasonable person in making a decision to consent to the procedure in question. *Peterson*, 652 S.W.2d at 931. There was no guarantee under the common law that a physician would disclose all material risks to a patient. If he failed to do so, the patient could bring suit. Under the Act, the Panel determines the minimum requirements for disclosure to be made, and if these are made, there is a presumption of non-negligence. If they are not made, there is a presumption of negligence.

The Panel determines what risks are material for various procedures, and this determination is no more arbitrary than one based on expert testimony in each individual trial. Physicians are not precluded by the Act from furnishing further information as to additional particular risks an individual patient might incur. Moreover, physicians remain accountable for the failure to fully in-

---

1. Penick alleges violations of article I, sections 3, 8, 9, 13, 16, 17, 19, and 26 of the Texas Constitution and amendments 1, 4, 5, 9 and 14 to the U.S. Constitution. Penick has waived most of these allegations of violations of specific constitu-tional provisions by failing to support them with argument. We address only Penick's general allegations of violations of due process, equal protection, open courts, and contract rights.

form patients of these material risks. If other material risks should have been disclosed, a patient can overcome the presumption of non-negligence through expert testimony in much the same way lack of disclosure was established under the common law. The patient's right and ability to sue for lack of informed consent still exists. We hold that the Act does not violate Penick's "right to know."

 While a person's right to determine what should be done to one's body implicates a fundamental privacy right, we do not find that the procedures for risk disclosure implemented in the Act denigrate either the ability to give knowledgeable consent to medical procedures or the remedies available when proper risk disclosure is not made. We conclude that the Act's risk disclosure procedure does not infringe on individual privacy rights.

 When a statute does not infringe upon fundamental rights or does not burden an inherently suspect class, we must determine only whether the statutory provision is rationally related to a legitimate state interest. *Rose v. Doctors Hosp.,* 801 S.W.2d 841, 846 (Tex.1990). We therefore analyze the Act in light of this standard. The legislature enacted the Act to remedy a perceived medical malpractice insurance crisis arising from a substantial increase in the frequency of health care liability claims and the amounts being paid out on these claims.[2] Tex.Rev.Civ.Stat.Ann. art. 4590i, § 1.02(a)(1)–(5) (Vernon Supp.1995). The Act delineates the state's interests in its list of purposes found at the beginning of the statute. *Id.* at § 1.02(b). These purposes include decreasing the cost of health care liability claims, thereby making malpractice insurance more affordable for health care providers, and health care more accessible and available to the public. *Id.*

 The Act's establishment of the Panel and its creation of rebuttable presumptions facilitate the state's interests. By mandating written, signed disclosure forms for many procedures, suits alleging failure to inform of material risks will be limited. We determine that the procedures in the Act for obtaining informed consent are rationally related to the state's legitimate interest in controlling costs of malpractice litigation.

 Penick also alleges that the statutory procedure for disclosure of risks promulgated by the Panel is unconstitutional under the open courts provision of the Texas Constitution.[3] The open courts provision guarantees that "the right to bring a well-established common law cause of action cannot be effectively abrogated by the legislature absent a showing that the legislative basis for the statute outweighs the denial of the constitutionally-guaranteed right of redress." *Sax v. Votteler,* 648 S.W.2d 661, 665–66 (Tex. 1983).

 Victims of medical malpractice have a well-defined common law cause of action to sue for injuries. *Lucas v. United States,* 757 S.W.2d 687, 692 (Tex.1988). However, "no one has a vested right in the continuance of present laws in relation to a particular subject." *Middleton v. Texas Power & Light Co.,* 108 Tex. 96, 185 S.W. 556, 560 (1916), *aff'd,* 249 U.S. 152, 39 S.Ct. 227, 63 L.Ed. 527 (1919). The legislature has the power to change and even to repeal the common law. *Id.* This action must not be arbitrary or unreasonable, however, and is appropriate only when the legislature enacts reasonable substitutes for the remedies it has withdrawn. *Lebohm v. City of Galveston,* 154 Tex. 192, 275 S.W.2d 951, 955 (1955).

---

**2.** Penick questions whether this perceived crisis in medical malpractice insurance actually exists. He failed to support this claim, however. A statute should not be struck down by an intermediate appellate court except on clear and certain grounds. *Scurlock Permian Corp. v. Brazos County,* 869 S.W.2d 478, 484 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *Wells v. Hames,* 464 S.W.2d 393, 395 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.).

**3.** The open courts provision states:

All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

Tex. Const. art. I, § 13.

We find that Penick's right to claim lack of informed consent has not been effectively abrogated by the disclosure of risks designated by the Panel. The legislature enacted a reasonable substitute for the common law informed consent procedures. Moreover, because the presumption of non-negligence created in the disclosure statute is rebuttable, a plaintiff is not precluded by the Act from bringing forth evidence of other risks that should have been disclosed and submitting that issue to the jury. Thus, the statute did not deprive Penick of access to the courts or his right to a jury trial. As long as the substance of the right to a jury trial is maintained, the procedures used are within the discretion of the legislature. *Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 529 (Tex.1995).

■ Penick next argues that the statute unreasonably and unnecessarily restricts and deprives individual patients and the public of their freedom and right to contract. Penick's contract argument is not persuasive because there is no contract for cure in this case. Dr. Christensen did not promise to cure Penick, and even if he had, any contract claim would fail for lack of a writing. *See* TEX.BUS. & COM.CODE ANN. § 26.01(a)(8) (Vernon 1987) (contract for cure must be in writing or it is barred by the statute of frauds). A physician makes no implied promise that the patient will be cured or that beneficial results will occur. *Zapata v. Rosenfeld,* 811 S.W.2d 182, 184 (Tex.App.—Houston [1st Dist.] 1991, writ denied). The risk disclosure form, which is not signed by Dr. Christensen or anyone with authority to sign for him, is not a contract. *See id.*

■ Finally, Penick challenges the statute for its vague and ambiguous provisions and indefinite standards for furnishing "informed consent." Due process is violated when persons of common intelligence are compelled to guess at a law's meaning and applicability. *Texas Antiquities Comm. v. Dallas Cty. Community College Dist.,* 554 S.W.2d 924, 928 (Tex.1977). We find no merit in Penick's claim. The Act clearly states its meaning and applicability. Its procedures can be easily followed.

We hold that the Act's procedure for obtaining a patient's informed consent through disclosure of risks promulgated by the Panel is constitutional. We overrule points five and six.

### CHARGE ERROR

■ Penick raises several complaints about the charge submitted to the jury. We review charge error under an abuse of discretion standard while recognizing that there is a presumption in favor of broad-form submission of questions. *Texas Dep't of Human Servs. v. E.B.,* 802 S.W.2d 647, 649 (Tex. 1990). Rule 278 requires trial judges to submit requested questions to the jury if the pleadings and any evidence support them. *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex. 1992); TEX.R.CIV.P. 278. Judgment must be reversed when a party is denied proper submission of a valid theory of recovery or a vital defensive issue raised by the pleadings and evidence, if timely raised and properly requested as part of the charge. *Exxon Corp. v. Perez,* 842 S.W.2d 629, 631 (Tex. 1992).

■ The trial court has wide discretion in submitting explanatory instructions and definitions. *Wisenbarger v. Gonzales Warm Springs Rehab. Hosp., Inc.,* 789 S.W.2d 688, 692 (Tex.App.—Corpus Christi 1990, writ denied). Instructions and definitions are proper when they are raised by the written pleadings, supported by the evidence, and they aid the jury in answering the questions in the charge. TEX.R.CIV.P. 277, 278.

■ If error in the charge is found, we then review the pleadings, evidence, and the entire charge to determine if the error is harmful. *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986). To reverse a judgment based on error in the charge, appellant must establish that "[t]he error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment...." TEX.R.APP.P. 81(b)(1).

To place Penick's complaints in context, we outline the charge and verdict in this case. Question One asked whether Dr. Christensen

performed an unnecessary total hip replacement surgery on Penick. The jury answered "No." Question Two, predicated on an affirmative answer to Question One, asked whether Dr. Christensen was negligent, grossly negligent, or acted fraudulently in performing surgery on Penick, and if such surgery was a proximate cause of any injuries sustained by Penick. The trial court submitted the following instruction on informed consent:

> In answering the following questions No. 3, 4 and 5, you are instructed that the Texas Medical Disclosure Panel, under the statutory laws of Texas, has determined that the following risks or complications are associated with "Arthroplasty of all joints with mechanical device" (which includes a total hip replacement such as performed on Joe Penick):
>
> 1. Impaired function such as shortening or deformity of the arm or leg, limp or foot drop.
>
> 2. Blood vessel or nerve injury.
>
> 3. Pain or discomfort.
>
> 4. Fat escaping from bone with possible damage to a vital organ.
>
> 5. Failure of bone to heal.
>
> 6. Bone infection.
>
> 7. Removal or replacement of any implanted device or materials.
>
> You are further instructed that if such risks or complications have been disclosed in writing, signed by the party and witnessed by a credible person before surgery, there is a "rebutable [sic] presumption" that Dr. Christensen did obtain Joe Penick's "informed consent."

Questions Three, Four and Five, to which the jury answered "No," were as follows:

### QUESTION NO. 3

Did Dr. Christensen fail to obtain Joe Penick's "informed consent" for the total hip replacement surgery?

### QUESTION NO. 4

If a patient under the same or similar circumstances as Joe Penick had been given the material facts regarding the risks or complications of a total hip replacement, do you find that a reasonable person would have refused the surgery in question?

### QUESTION NO. 5

Did Joe Penick suffer any injuries as a result of a lack of "informed consent" in connection with total hip replacement surgery?

Questions Six and Seven inquired as to actual and exemplary damages, and the jury found none.

After the instructions on negligence, ordinary care and proximate cause, the court included an instruction that " '[n]ew and independent cause,' means that the act or omission of a separate and independent agency, not reasonably foreseeable by an orthopedic surgeon exercising ordinary care, that destroys the causal connection, if any, between the act or omission inquired about in the occurrence in question and thereby becomes the immediate cause of such occurrence." In points three and four, Penick complains the trial court erroneously overruled his objection to the "new and independent cause" instruction and erred in refusing his instruction that Dr. Christensen should be liable for a subsequent physician's negligence. First, there is some evidence to support the new and independent cause instruction. There was testimony from Dr. Christensen and Dr. Richard Eppright that the San Antonio x-rays did not show a loosening of the device. Dr. Neidre admitted that x-rays he had taken in October 1983 before the first revision surgery showed no loosening. Dr. Louis Bujnoch, a board certified diagnostic radiologist, testified that x-rays taken after the first hip replacement and before the first revision did not show a loosening of the cup. He further testified that the San Antonio doctors used too much dye and may have misread the x-rays. Thus, the evidence supports the theory that the revision surgery was unnecessary and caused Penick's subsequent problems. In addition, there is evidence of subsequent infection and a traumatic injury by a fall, both of which could be causes of Penick's injuries. The trial court properly submitted this instruction.

Penick requested three alternative instructions to offset this evidence under his theory of the initial tortfeasor's liability for the negligence of subsequent physicians, which were refused. Penick's proposed instructions are not substantially correct because they were not predicated on a finding that Dr. Christensen was negligent. This theory is applicable only when the first actor has been found negligent. One who *wrongfully* injures another is liable in damages for the consequences of the negligent treatment by a physician selected in good faith. *Cannon v. Pearson,* 383 S.W.2d 565, 567 (Tex. 1964). (emphasis supplied).

For the proposition that Dr. Christensen should be held liable for subsequent negligence and therefore that the trial court erred in its instructions, Penick cites *Galvan v. Fedder,* 678 S.W.2d 596 (Tex.App.—Houston [14th Dist.] 1984, no writ). In that case, however, the jury found the defendant doctor negligent. *Id.* at 597. The jury failed to find proximate cause, and this court concluded its refusal was based on inclusion of an erroneous "new and independent cause" instruction for which there was no support in the evidence. *Id.* at 599. Here, the jury made no finding of negligence, and evidence supported an instruction on "new and independent cause." We overrule points of error three and four.

In point seven, Penick contends the court erred in predicating jury Question Two on an affirmative answer to Question One. The jury answered, "No," to Question One on unnecessary surgery and consequently did not answer Question Two on negligence, gross negligence, or fraud. Penick argues that reversible error occurred because the jury was not given the opportunity to answer whether Dr. Christensen was negligent in his performance of the hip replacement surgery, separate and apart from any negligence in obtaining consent or performing unnecessary surgery.

Dr. Christensen argues, however, that there is absolutely no evidence in the record that the surgery was negligently performed to support submission of this issue. The only evidence of this nature suggests the "possibility" of technical errors in preparing and placing the cement as being the cause of loosening of the cup. Even Penick's own expert, Dr. George Sibley, testified that, based on the medical records from the surgery, he had no criticism of the way the operation was done and he found nothing that Dr. Christensen did caused the loosening. He admitted the following:

QUESTION: Referring specifically to the operation that was performed by Dr. Christensen, the technique that Dr. Christensen used himself, doing the operation, that was done properly?

ANSWER: I have no problem with that.

\* \* \* \* \* \*

QUESTION: You don't have any criticism at all with the way the operation was actually performed, is that fair?

ANSWER: That's a fair general statement, yes.

Dr. Evans also testified that he did not think Dr. Christensen negligently performed surgery on Penick. Dr. Evans denied that any of the surgeries he performed on Penick were required because of any negligence by Dr. Christensen.

Apart from the separate issue of informed consent, the only evidence supporting submission of negligence concerned whether the original hip replacement was necessary. Penick's fraud allegation concerns the failure to treat Penick conservatively as an alternative to surgery. This claim is merely another form of alleging that surgery was unnecessary. Accordingly, the jury's negative answer to whether the surgery was unnecessary was dispositive of both negligence and fraud. Gross negligence, of course, should not be submitted absent a finding of negligence. Therefore, the theories of recovery submitted in Question Two were negated by the jury's answer to Question One. We hold that the trial court did not err in predicating Question Two on an affirmative answer to Question One.

In point eight, Penick argues the trial court erred in refusing separate issues on negligence, gross negligence or fraudulent conduct. For the same reasons just discussed, this contention also fails. We also

note that Penick never requested a general negligence question. Failure to submit a question on which the complaining party has the burden of proof is reversible error only if the question was requested in writing in substantially correct form. TEX.R.CIV.P. 278. We overrule points of error seven and eight.

In point nine, Penick claims the court erroneously refused his question on misrepresentation. His allegations supporting this theory of recovery were that Dr. Christensen misled him as to the seriousness of his condition and the risks of surgery. Thus, Penick's claim of misrepresentation is merely another shade of the informed consent and unnecessary surgery questions. It is not reversible error to fail to submit "other and various phases or different shades of the same question." TEX.R.CIV.P. 278. Moreover, a claim for lack of informed consent is a negligence cause of action. TEX.REV.CIV.STAT.ANN. art. 4590i, § 6.02 (Vernon Supp.Pamph.1995). Penick's authorities supporting submission of separate misrepresentation theories in connection with disclosures of risks pre-date the Act, and are therefore inapplicable here. *See, e.g., Gaut v. Quast,* 510 S.W.2d 90 (Tex. 1974). We overrule point of error nine.

■■■ In point of error ten, Penick claims the trial court erred in refusing to include negligence as an element of the informed consent question. As just noted, an action for the failure of a doctor to fully inform a patient of the risks of surgery is a negligence cause of action. *McKinley v. Stripling,* 763 S.W.2d 407, 409 (Tex.1989). "[T]he only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent." TEX.REV.CIV.STAT. ANN. art. 4590i, § 6.02 (Vernon Supp.Pamph.

1995). A question on proximate cause must be submitted to the jury as in ordinary negligence cases so that the jury may determine whether any breach of the duty to inform the patient of risks caused the injuries suffered. *McKinley,* 763 S.W.2d at 409.

■■■ The Act creates a rebuttable presumption of non-negligence when disclosure is provided in accordance with the statute, as here.[4] *See Peterson,* 652 S.W.2d at 931. A presumption may be rebutted by presenting contrary evidence that the presumed fact did not exist. *Technical Chem. Co. v. Jacobs,* 480 S.W.2d 602, 606 (Tex.1972). The effect of a rebuttable presumption is to shift the burden of producing evidence to the party against whom it operates. *General Motors Corp. v. Saenz on Behalf of Saenz,* 873 S.W.2d 353, 359 (Tex.1993). Once that burden is satisfied and evidence contradicting the presumption has been offered, the presumption disappears and is not weighed or treated as evidence. *Id.* The evidence on the issue is then evaluated as it would be in any other case, with the facts upon which the presumption was based remaining in evidence and supporting any inferences that may be reasonably drawn from them. *Id.*

■■■ Because non-negligence is presumed when statutory disclosure is made, the jury need only consider negligence when rebuttal evidence is offered to show the physician failed to disclose other material risks. No probative evidence of Dr. Christensen's failure to disclose any material risks that Penick incurred was offered in this case. Even Dr. Evans testified that the risks that should be disclosed are those on the form. Penick's only complaints are that Dr. Christensen did not inform him of the following:

4. Penick signed a disclosure and consent form for a total hip replacement, which stated in relevant part:

I (we) realize that common to surgical, medical and and/or diagnostic procedures *is the* potential for infection, blood clots in veins and lungs, hemorrhage, allergic reactions, and even death. I (we) also realize that the following risks and hazards may occur in connection with this particular procedure: *Impaired function, such as, shortening or deformity of arm or leg; limp or foot drop; blood vessel or nerve*

*injury; pain or discomfort, fat escaping from bone with possible damage to a vital organ; failure of bone to heal; bone infection; removal or replacement of any implanted device or material.* (emphasis in original).

It is undisputed that arthroplasty, or joint replacement, is one of the procedures for which the Panel has promulgated risks to be disclosed, and these risks are those listed on Penick's form. It is also undisputed that the disclosure form meets the statute's other requirements for setting up the rebuttable presumption of non-negligence.

1. Technical errors in mixing the cement could result in loosening of the cup, requiring revision surgery;
2. Dr. Christensen's failure rate;
3. Risk of thrombophlebitis;
4. Risks of surgical errors or techniques;
5. Penick's pain could be treated conservatively.

Penick was required to establish not only that he would not have consented to surgery had these risks been disclosed, but also "that he was injured by the occurrence of the risk of which he was not informed." *Jones v. Papp*, 782 S.W.2d 236, 241 (Tex.App.—Houston [14th Dist.] 1989, writ denied) (citing *Hartfiel v. Owen*, 618 S.W.2d 902, 905 (Tex. Civ.App.—El Paso 1981, writ ref'd n.r.e.)). The record in this case shows that Penick was not injured by the occurrence of these enumerated undisclosed risks. There is no evidence technical errors occurred in mixing the cement or during surgery. The testimony only contains the suggestion that there is a possibility that such errors could cause loosening. Although Dr. Christensen did not discuss his failure rate with Penick, he testified that after five years, only 0.6% of his patients showed some form of problem from hip replacement. Moreover, the record does not support the claim that Dr. Christensen's surgery failed, and there is no evidence that Dr. Christensen was negligent in his performance during the surgery. He testified he performed a "perfect" hip replacement and Penick's experts did not fault his performance. There is no evidence Penick developed thrombophlebitis. Penick's pain was treated conservatively for several weeks before surgery, and he was at risk of acquiring an addiction to the strong medication he was taking. Dr. Christensen testified that because Penick was taking the maximum dosage of a strong pain medicine, conservative treatment could have done little for him. Dr. Christensen testified the primary factor in deciding to proceed with hip replacement is when the patient can no longer tolerate the pain he is suffering. Penick elected to have the surgery to alleviate the pain. Thus, we conclude there is no rebuttal evidence requir-

ing submission of negligence as part of the informed consent question.

Moreover, had such evidence been submitted, Penick's proposed submission was incorrect. Penick submitted the following question, which the trial court refused:

Was DR. CHRISTENSEN negligent in failing to obtain JOE PENICK'S "informed consent" relative to the total hip replacement surgery?

First, this question standing alone assumes that Dr. Christensen failed to obtain Penick's consent and is affirmatively incorrect. *See Placencio v. Allied Indus. Int'l, Inc.*, 724 S.W.2d 20, 21 (Tex.1987). Additionally, Penick failed to include questions inquiring whether any of the conditions he claimed should have been disclosed were material risks in arthroplasty that could have influenced a reasonable person in making a decision to consent to the procedure or whether these risks caused Penick's injuries. *See McKinley*, 763 S.W.2d at 408–09 n. 2; *Barclay*, 704 S.W.2d at 10; *see also* STATE BAR OF TEXAS, PATTERN JURY CHARGES, PJC 51.11 (1990) (informed consent question under common law should include elements of breach, materiality of risk and proximate cause). We overrule point of error ten.

 In point eleven, Penick complains the court erred in refusing his four alternative instructions concerning the statutory rebuttable presumption. He requested the following in his first refused instruction:

The statutory "rebuttal presumption" [*sic*] of informed consent can be overcome by evidence of other material risks or complications inherent in the total hip replacement surgery. Therefore, you are instructed that if you find there are other material risks or complications which could influence a reasonable person, under the circumstances, to refuse the surgery, then you may find there was a failure to obtain Mr. Penick's [consent] if Dr. Christensen failed to inform Mr. Pinick [*sic*] of such risks or complications.

While we do not express approval of this instruction, it is not affirmatively incorrect.[5]

---

**5.** We note that while the Pattern Jury Charges do

not provide an example for the circumstances

However, as noted earlier, Penick supplied no evidence of a material risk that should have been disclosed but was not. Removal of the device and infections, the risks that Penick ultimately suffered, were disclosed. There is no evidence requiring submission of an instruction as to rebuttal of the statutory presumption. We overrule point of error eleven.

## SUFFICIENCY OF THE EVIDENCE

■ In reviewing a "no evidence" or legal sufficiency of the evidence point, we consider only the evidence and reasonable inferences that tend to support the jury's findings, and we disregard all evidence and inferences to the contrary. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.,* 774 S.W.2d 666, 668 (Tex.1989). If we find any evidence to support the finding, we overrule the point and uphold the finding. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989).

■ When we review a challenge to the factual sufficiency of the evidence, we consider all of the evidence in the record. *Plas–Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). Only if the evidence is too weak to support the finding or the finding is so against the overwhelming weight of the evidence that the verdict is manifestly unjust and clearly wrong will we set aside the verdict and order a new trial. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965).

In points twelve through twenty-one, Penick contends the evidence is legally and factually insufficient to support the verdict and judgment below. Specifically, he attacks the sufficiency of the evidence to support the following findings of the jury:

1. That the hip surgery was medically necessary when it was performed, in response to Question One;

2. That Dr. Christensen obtained Penick's informed consent, in response to Question Three;

3. That a reasonable person would not have refused surgery under the circumstances, in response to Question Four;

4. That Penick suffered no injuries as a result of lack of informed consent, in response to Question Five;

5. That Penick was entitled to no damages as a result of hip surgery performed by Dr. Christensen, in response to Question Six.

In addition to evidence previously discussed, we find ample evidence in the record supporting these findings.

■ Penick had been in intense pain for several weeks from the osteoarthritic condition in his hip and he was taking eight to ten narcotic pain killers per day. He was using crutches to walk. There were indications the arthritic condition of his hip was deteriorating. There is testimony that the deterioration in Penick's hip could have been present much earlier than his first symptom of severe pain in the hip, but this pain was masked by the pain from his recent back surgery and the pain medication he took after surgery. Dr. Eppright agreed with Dr. Christensen's testimony that Penick was a candidate for hip replacement and also would have recommended surgery. Penick admitted other physicians in the past had told him he would need hip replacement one day.

■ Dr. Christensen testified that he explained the risks, benefits and potential complications associated with hip replacement surgery. He told Penick that due to his age and weight, the artificial hip would fail at least once due to wear or loosening, and revision surgery would be required. Dr. Christensen explained that infections including "catastrophic deep wound infection" are risks of the surgery. Penick read and signed the proper consent form disclosing the risks of this procedure. Even though he testified that he did not read the entire consent form, he agreed that he knew the surgery involved the risk of death, infection, blood clots, aller-

---

present in this case, other suggested charges include an instruction for overcoming the statutory presumptions in the Act. For example, to overcome the presumption of negligence when the statutory disclosure was not made, the fol-

lowing is recommended: "This presumption may be overcome if the physician adequately disclosed such risks and hazards in some other manner." 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 51.14 (1990).

gic reactions, hemorrhage, impaired function, damage to vital organs, failure to heal, and additional surgery to replace the implant. Despite his understanding of these risks, Penick admitted he discussed the surgery with his wife, thought about it and agreed to go through with it. There is evidence that Penick chose to see Dr. Christensen in the first place because he was a specialist in hip replacement.

As to the surgery went well and Penick's follow-up with Dr. Christensen indicated normal progress and healing. Dr. Christensen believed he had performed a "perfect" hip replacement. There is evidence that the revision surgery was unnecessary and was the cause of Penick's later problems. There is also evidence that Penick's injuries were the result of his subsequent surgeries and infections or traumatic injury.

As to the evidence supporting no damages, there is evidence that Penick had not worked between 1979 and 1983, and had only just begun working shortly before his first hip surgery. The evidence also established that Penick had already been classified by the Social Security Administration as totally disabled before the first hip surgery. Most notable is the overwhelming evidence of other possible causes of Penick's damages. The jury could have determined that in the absence of Dr. Christensen's negligence, any injury Penick suffered was caused by subsequent events.

In reviewing the factual sufficiency of the evidence, we must consider evidence which does not support the judgment. We note there is some evidence that the surgery was unnecessary. Penick's physician-witnesses testified that hip replacement should be reserved for those over 60, and Penick was only 45 years old. They stated that their review of the records would not justify hip replacement for someone as young as Penick. Dr. Christensen termed the surgery "elective." However, this evidence is not so overwhelming as to make the verdict unjust in light of the testimony of the severity of Penick's pain and deterioration of his condition. Moreover, the jury found the testimony of Dr. Christensen and his experts to be more credible than the witnesses provided by Penick.

While Penick's testimony established he suffered pain and incurred medical expenses, he failed to establish his damages were caused by Dr. Christensen's negligence. Moreover, it is well settled law in Texas that a finding of zero damages, even if contrary to the evidence, is rendered immaterial by a finding of no liability. *Ramsey v. Lucky Stores, Inc.*, 853 S.W.2d 623, 635 (Tex.App.— Houston [1st Dist.] 1993, writ denied).

On the issue of informed consent, Penick testified that Dr. Christensen told him he had no choice but to accept the surgery and that he was told there were "no risks, no complications." He testified Dr. Christensen did not discuss the lists of risks on the disclosure form. Dr. Christensen contradicted Penick, and the jury chose to believe Dr. Christensen's testimony.

While there is some evidence to support Penick's contentions, the credibility determination made by the jury should not be disturbed. This court is not a fact finder, so we may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if the evidence would support a different result. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). We hold that the evidence is legally and factually sufficient to support the jury's findings and overrule points of error twelve through twenty-one.

## CONCLUSION

We reverse the summary judgment in favor of Pfizer and remand Penick's cause of action against it for a trial on the merits. We affirm the take nothing judgment in favor of Dr. Christensen.