Sylvia BEAN, Evelyn Habel, and
Suella Newell, Appellants,

v.

BAXTER HEALTHCARE
CORPORATION,
Appellee.

Nos. 14–96–00382–CV, 14–96–00383–
CV, 14–96–00384–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 12, 1998.

Olan J. Boudreaux, Michael T. Gallagher, Price Ainsworth, Houston, for appellants.

James E. Essig, D. Mitchell McFarland, Houston, Thomas M. Peterson, San Francisco, for appellee.

Before MURPHY, C.J., and HUDSON and FOWLER, JJ.

## OPINION

MURPHY, Chief Justice.

Appellants, Sylvia Bean, Evelyn Habel, and Suella Newell, sued appellee, Baxter Healthcare Corporation ("Baxter"), for fail-

ing to warn them of the dangers of their silicone breast implants. The jury assessed no liability against appellees. In two points of error, appellants contend the trial court erred in excluding a videotape of Newell's implant removal surgery and improperly charged the jury regarding the learned intermediary doctrine. We affirm.

Appellants separately sued Baxter[1] for injuries allegedly resulting from exposure to silicone following their breast implant surgeries. Their cases were consolidated and tried together pursuant to Texas Rule of Civil Procedure 174. During the testimony of Dr. Louie Worthing, who surgically removed Newell's implants, Suella Newell offered the videotape of the surgery to remove her implants. Counsel for Baxter objected, arguing the tape was offensive and "difficult to watch." The court sustained the objection but admitted the tape, refusing to allow it to be played in open court. The court admitted still photographs of the surgery, which purportedly indicated silicone in Newell's chest cavity and on the surface of the implant and Worthing's glove. In addition, Worthing testified regarding the silicone within the cavity and recounted that he had not cut the implant during the procedure. During Baxter's case-in-chief, Dr. Eric Austad testified that he could see from the videotape that Worthing cut Newell's right implant during the removal surgery. Appellants did not object to this testimony or reoffer the videotape.

In their first point of error, appellants contend the court erred in excluding the surgery videotape. We review the trial court's decision regarding the exclusion of evidence for an abuse of discretion. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995); *Parkway Hosp., Inc. v. Lee*, 946 S.W.2d 580, 583 (Tex.App.—Houston [14 th Dist.] 1997, writ denied). Reversal for improper exclusion of evidence is appropriate only when 1) the trial court committed error in excluding certain evidence, and 2) the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See* TEX.R. APP.P. 81(b);

---

**1.** Baxter assumed the liabilities of Heyer–Schulte Corporation in connection with a series of acqui- sitions and mergers.

*Lee,* 946 S.W.2d at 583. An appellate court will not reverse the trial court's decision based on the exclusion of evidence where the evidence to be admitted is cumulative and not controlling on a material issue dispositive of the case. *See Lee,* 946 S.W.2d at 583. We review the entire record to determine whether the complaining party showed that the judgment turns on the excluded evidence. *See Alvarado,* 897 S.W.2d at 753–54.

### Error in Excluding the Videotape

■ As a preliminary matter, the trial judge did not view the videotape prior to excluding it. "In making its determinations under [Texas Rule of Civil Evidence] 403, the trial court must: (i) identify the probative value of the proffered evidence; (ii) identify the costs of admitting the evidence; and (iii) weigh the one against the other." *Boswell v. Brazos Elec. Power Co–op., Inc.,* 910 S.W.2d 593, 601 n. 3 (Tex.App.—Fort Worth 1995, writ denied). The court cannot satisfy these requirements unless it actually views the evidence. Because the court failed to do so, it erred in excluding the videotape.[2]

### Evidence Was Cumulative

We next address whether the trial court's error in excluding the videotape was harmful. The exclusion of evidence is harmless if it is cumulative of other evidence admitted on the same issue. *Exxon Corp. v. Shuttlesworth,* 800 S.W.2d 902, 907 (Tex.App.—Houston [14th Dist.] 1990, no writ).

■ Appellants note three purposes of the videotape: (1) to establish Worthing did not cut the implant upon removal; (2) to establish the existence of a design defect[3]; and (3) to cross-examine Austad regarding his testimony that the videotape showed Worthing cut the implant. The videotape, however, would have been cumulative if admitted for the first two of these purposes. In connection with whether Worthing cut the implant, Worthing testified:

Q: In reviewing the video tape of SN56, the removal of Mrs. Newell's implants, as well as based upon your experience in the surgery itself, were you able to determine whether or not it [sic] was any of the instruments that you were using that had resulted in this free silicone that we see between your finger and the implant there in the photograph that we've marked SN57?

A: No.

Q: Did you cut the implant?

A: No, I did not.

Q: Okay. And how can you tell that?

A: Well, in my experience, the electrocautery unit is a good instrument for opening the fibrous capsule, which is a dense scar tissue around the implant. I can incise the scar tissue and not damage the implant. As you can see, the left-sided implant was grossly intact, didn't have any free silicone on the surface. Whereas immediately, if you are looking at the videotape, when I excised the fibrous capsule on the right side, slimy silicone oozed out and was present throughout the implant cavity. As you can see on the upper right hand corner, where it says: Right, that's a view into the interior of the scar tissue after I removed the implant. You can see slimy silicone streaming down all over the cavity, whereas on the left side, there appears to be none.

. . . .

Q: Now, at the time you removed it, you did not see any interruption that you could see in the surface of the shell for the right implant; isn't that true?

A: That's correct.

2. Appellants also assert the trial court improperly stated the basis for excluding the evidence, noting "its prejudicial value outweighs its probative value" rather than finding the probative value was substantially outweighed by the danger of unfair prejudice. Because we find the court erred in excluding the tape, we do not address this contention.

3. This purpose stems from, and is almost identical to, the previous purpose. Appellants contend that if Worthing did not cut the implant, a design defect must have caused the presence of silicone in Newell's breast cavity, and thus the videotape establishes a design defect.

Regarding design defect, five of appellants' experts testified silicone implants are prone to gel bleed and migration, two testified implants cause a reaction in surrounding tissue, and one testified silicone implants are not safe or efficacious. As such, the videotape was cumulative as to whether Worthing cut the implant and the existence of a design defect, and therefore, error based on the exclusion of the tape was not reversible.

■ Appellants also contend they should have been allowed to introduce the videotape to cross-examine Austad regarding his contention that Worthing cut the implant during removal. Austad testified "there is a real sense as [he] watched [the videotape] closely" that Worthing cut the implant and "I think you can, in fact, see where he cuts the implant on the right as he's making an incision across it probably that long with this electric cautery." Appellants assert Austad was allowed to use the videotape to bolster his testimony, but the court did not afford them this option in connection with Worthing's testimony. Appellants did not properly preserve this objection. To preserve error regarding the exclusion of evidence, an appellant must (1) attempt during the evidentiary portion of the trial to introduce the evidence; (2) if an objection is lodged, specify the purpose for which the evidence is offered; (3) obtain a ruling from the trial court; and (4) if the judge rules the evidence inadmissible, make a record, through a bill of exceptions, of the evidence the party seeks to admit. *See Estate of Veale v. Teledyne Indus., Inc.*, 899 S.W.2d 239, 242 (Tex.App.—Houston [14th Dist.] 1995, writ denied). During Worthing's testimony, appellants offered the tape, obtained a ruling, and told the court they offered it to show silicone in appellant's chest cavity.[4] Consequently, appellants preserved error after its initial offer of the videotape. If exclusion of evidence is based on the substance of the evidence, however, the offering party must reoffer it if it again becomes relevant. *See Jones v. Kinder*, 807 S.W.2d 868, 871 (Tex.App.—Amarillo 1991, no writ). This may occur when the evidence is pertinent to rebuttal. *See Minor*

*v. Commercial Ins. Co.*, 557 S.W.2d 608, 610 (Tex.Civ.App.—Texarkana 1977, no writ). Error is waived if the offering party fails to reoffer evidence for a limited purpose after it has been excluded pursuant to a general objection. *See id.*

■ Although the videotape was cumulative and therefore inadmissible in connection with Worthing's testimony, it arguably became admissible when Austad offered his testimony based on the videotape. Appellants did not object to Austad's testimony regarding the videotape, nor did they offer the videotape during Austad's cross-examination or at any time following Worthing's testimony. As such, appellants have waived error.

■ Finally, the exclusion of evidence generally is not reversible unless the complaining party can demonstrate that the whole case turns on the excluded evidence. *See Johnson v. City of Houston*, 928 S.W.2d 251, 253 (Tex.App.—Houston [14th Dist.] 1996, no writ). Here, appellants have not set forth in their brief, nor did they assert at oral argument, that the entire case turned on the exclusion of this videotape. As such, reversal for excluding the evidence is inappropriate. We overrule appellants' first point of error.

In their second point of error, appellants argue the court erred in charging the jury regarding the "learned intermediary" doctrine. According to appellants, this doctrine has been recognized by Texas intermediate appellate courts but not the Texas Supreme Court and not as to medical devices. They contend the doctrine is only applicable to warnings afforded for prescription drugs.

The disputed portion of the charge submitted to the jury was as follows:

Question No. 2

. . . .

"**Adequate warnings and instructions**" means warnings and instructions given in a form that could reasonably be expected to catch the attention of a reasonably prudent

---

**4.** A bill of exceptions was unnecessary, as the court admitted the tape but refused to allow the

jury to see it.

plastic surgeon in the circumstances of the product's use; and the content of the warnings and instructions must be comprehensible to the average plastic surgeon and must convey a fair indication of the nature and extent of the danger and how to avoid it to the mind of a reasonably prudent plastic surgeon. A reasonably prudent plastic surgeon is a learned intermediary between the manufacturer and the ultimate user of the product.

When an adequate warning is given, the manufacturer may reasonably assume that the warning will be read and heeded and a product bearing such a warning is not defective or unreasonably dangerous.

A manufacturer of a medical product that must be prescribed or administered by a doctor has no duty to warn directly each patient who receives the medical product of its dangerous properties, if any, but the manufacturer has a duty to warn the doctor of the product's dangerous characteristics, if any.

Generally, a seller satisfies the duty to warn adequately of dangers for safe use by furnishing the warnings and instructions to the prescribing physician. The physician, as a learned intermediary, is the person best qualified to make an informed choice after evaluating the benefits of a particular device against the risk of harm from its use.

Question No. 3

. . . .

A manufacturer of a medical product that must be prescribed or administered by a doctor has no duty to warn directly each patient who receives the medical product of its dangerous propensities, if any, but the manufacturer has a duty to warn the doctor of the product's dangerous characteristics, if any.

Generally, a seller satisfies the duty to warn adequately of dangers and instruct for safe use by furnishing the warnings and instructions to the prescribing physician. The physician, as a learned intermediary, is the person best qualified to make an informed choice after evaluating the benefits of a particular device against the risk of harm from its use.

We review alleged charge error for an abuse of discretion, affording wide discretion to the trial court in submitting explanatory instructions and definitions. *See Penick v. Christensen*, 912 S.W.2d 276, 287 (Tex.App.—Houston [14 th Dist.] 1995, writ denied). Instructions and definitions are proper when they are raised by the written pleadings, supported by the evidence, and aid the jury in answering the questions in the charge. *See id.* If we find the trial court committed error in the charge, we must then determine whether the error is harmful. *Id.* We will reverse the judgment only if the error amounted to such a denial of the appellants' rights as to be reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. *See* Tex.R.App. P. 81(b)(1); *Penick*, 912 S.W.2d at 287.

Appellants claimed in their petition, among other things, that Baxter failed to warn them of the dangers of silicone, constituting negligence, misrepresentation, and a violation of 402B of the Restatement (Second) of Torts. Section 388 of the Restatement (Second) of Torts governs failure to warn cases and states:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it was supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement (Second) of Torts § 388 (1965). Comment n sets forth the learned intermediary doctrine and explains the seller's duty when a warning is given to an intermediary:

*Warnings given to third persons.* Chattels are often supplied for the use of others, although the chattels or the permission to use them are not given directly to those for whose use they are supplied.... In all such cases the question may arise as to whether the person supplying the chattel is exercising that reasonable care, which he owes to those who are able to use it, by informing the third person through whom the chattel is supplied of its actual character.

RESTATEMENT (SECOND) OF TORTS § 388 cmt. n. The comment also describes the factors to be considered in determining whether a warning to an intermediary is sufficient to discharge the manufacturer's duty to warn, which include (1) the character of the intermediary, (2) the risk of harm, (3) the dangerous condition of the product, (4) the form of the warnings given, and (5) the burden on the supplier in being required to give a warning. *See id.; In re TMJ Implants Prods. Liability Litig.,* 872 F.Supp. 1019, 1028 (D.Minn.1995), *aff'd,* 97 F.3d 1050 (8th Cir. 1996).

Texas courts have long applied Section 388 of the Restatement (Second) and comment n in the context of prescription drugs. *See, e.g., Cooper v. Bowser,* 610 S.W.2d 825, 830–31 (Tex.Civ.App.—Tyler 1980, no writ); *see also Reyes v. Wyeth Lab.,* 498 F.2d 1264 (5th Cir.1974); *Gravis v. Parke–Davis & Co.,* 502 S.W.2d 863, 870 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.). The learned intermediary doctrine arises when a product manufacturer has little or no contact with the ultimate user. The third party intermediary decides whether to purchase and prescribe the medicine, taking into account the risk and benefit to the patient, as well as the characteristics of the particular drug. As explained by the Fifth Circuit in *Reyes:*

> This special standard for prescription drugs is an understandable exception to the Restatement's general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent in his products. Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into ac-

count the propensities of the drug, as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, an individualized medical judgment bottomed on knowledge of both patient and palliative.

*Reyes,* 498 F.2d at 1276.

The Fifth Circuit has refused to apply the doctrine in a mass immunization case where the oral vaccine was not administered as a prescription drug and the personnel made no individualized medical judgment regarding the vaccinee's needs or susceptibilities. *See id.* at 1277 (regarding mass immunizations). Subsequent to the *Reyes* opinion, the Fifth Circuit held the doctrine applies even if the physician makes no individualized judgment in prescribing and administering a vaccination. *See Hurley v. Lederle Lab.,* 863 F.2d 1173, 1179 (5th Cir.1988); *Swayze v. McNeil Lab., Inc.,* 807 F.2d 464, 471–72 (5th Cir. 1987). The crucial consideration in these cases was the existence of the patient-physician relationship, which was absent in *Reyes. See Hurley,* 863 F.2d at 1178–79.

Appellants argue the learned intermediary doctrine has never been explicitly adopted by the Texas Supreme Court. In *Alm v. Aluminum Co. of Am.,* 717 S.W.2d 588 (Tex. 1986), however, the Texas Supreme Court stated:

> Alcoa argues and the court of appeals held that Alcoa satisfied its duty to warn of the hazard of bottle cap blow off by adequately warning JFW. We agree that a manufacturer or supplier may, in certain situations, depend on an intermediary to communicate a warning to the ultimate user of the product.

*Id.* at 591. It then cited with approval appellate court decisions applying the doctrine in the prescription drug context. *See id.* at 591–92. Further, the Texas Supreme Court has refused writ in at least two cases applying the doctrine, finding no reversible error. *See Khan v. Velsicol Chem. Corp.,* 711 S.W.2d 310, 313 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) (refusing to apply doctrine to relieve pesticide manufacturer of duty to warn); *Gravis v. Parke–Davis & Co.,* 502

S.W.2d 863, 870 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.) (applying doctrine to prescription drugs).

Appellants also contend, correctly, that Texas courts have applied the doctrine only to prescription drugs and not to medical devices. Importantly, however, the doctrine has not been rejected by a Texas court under these circumstances. Furthermore, other jurisdictions have applied the doctrine in failure to warn cases involving breast implants. See Craft v. Peebles, 78 Hawai'i 287, 893 P.2d 138, 156 (1995); see also Toole v. McClintock, 999 F.2d 1430, 1432 (11 th Cir.1993); Lee v. Baxter Healthcare Corp., 721 F.Supp. 89, 95 (D.Md.1989); Desmarais v. Dow Corning Corp., 712 F.Supp. 13, 17 (D.Conn.1989); Perfetti v. McGhan Medical, 99 N.M. 645, 662 P.2d 646, 650 (1983). In addition, other jurisdictions have approved the doctrine's application in cases involving other medical devices. See, e.g., Jacobs v. E.I. Du Pont Nemours & Co., 67 F.3d 1219, 1239 (6 th Cir.1995) (teflon jaw implants); Violette v. Smith & Nephew Dyonics, Inc., 62 F.3d 8, 13–14 (1 st Cir.1995) (endoscope); Odom v. G.D. Searle & Co., 979 F.2d 1001, 1003 (4 th Cir.1992) (IUD); Tansy v. Dacomed Corp., 890 P.2d 881, 886 (Okla.1994) (penile implant). Finally, a number of cases have applied the doctrine to non-medical products and devices, contrary to the holding in Khan. See Dole Food Co., Inc.v. North Carolina Foam Indus., Inc., 188 Ariz. 298, 935 P.2d 876, 880 (1996) (foam insulation); Brown v. Drake–Willock Int'l, Ltd., 209 Mich.App. 136, 530 N.W.2d 510, 516 (1995) (formaldehyde used to clean dialysis machine).

 Here, we consider the applicability of the learned intermediary rule in a failure to warn case involving silicone breast implants. Certainly, in the context of breast implant surgery, there is a patient-physician relationship, as is necessary to apply the doctrine. See Hurley, 863 F.2d at 1178–79. The evidence establishes the implanting physicians were integrally involved in determining which implants to use, as appellants relied on them to choose the appropriate implant and give them information regarding the surgery and the product. Further, the doctors were clearly in a better position

than the patient to weigh the benefits of the implant against the harm they posed, if any. In addition, we see no basis for distinguishing silicone implants from prescription drugs for purposes of applying the doctrine; in both instances, the product is manufactured for administration only by a physician or other authorized person. See Gravis, 502 S.W.2d at 870. In general, the physicians dispensing prescription medicine and inserting the implant better understand their dangers and propensities. See id. Further, in both situations, the physicians "must use [their] comprehensive training and experience in conjunction with [their] knowledge of the individualized patient in determining the suitability of the medication." Rolen v. Burroughs Wellcome Co., 856 S.W.2d 607, 609 (Tex.App.Waco—1993, writ denied).

Appellants contend that, even if the charge was correct, it amounted to a comment on the weight of the evidence. First, they argue the charge was a comment on the weight because the instructions set forth an incorrect statement of Texas law. We disagree. As detailed above, the learned intermediary doctrine applies to warnings provided to plastic surgeons regarding breast implants.

 Appellants also contend the charge was a comment on the weight because of the number of times the charge referred to the doctrine. A trial court is required to submit explanatory explanations and definitions to assist the jury in answering the questions submitted. See Redwine v. AAA Life Ins. Co., 852 S.W.2d 10, 14 (Tex.App.—Dallas 1993, no writ). The court must exclude any matter which does not aid the jury in answering the submitted questions. See id. An instruction is a comment on the weight of the evidence if the judge assumed the truth of a material controverted fact, exaggerated, minimized, or withdrew relevant evidence from the jury's consideration, see Moody v. EMC Servs., Inc., 828 S.W.2d 237, 244 (Tex.App.—Houston [14 th Dist.] 1992, writ denied), or suggests the judge's opinion about the matter, see Redwine, 852 S.W.2d at 14.

Question Two, one of two questions containing learned intermediary instructions, asked the jury whether the implants had a

design or marketing defect. To clarify, the court included a definition of marketing defect, which stated in part that it is a failure to give adequate warnings to the plastic surgeon of the dangers the appellee knew or should have known of at the time. This definition is well-established in Texas case law. *See American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 426 (Tex.1997); *Clark Equip. Co. v. Pitner*, 923 S.W.2d 117, 126 (Tex.App.—Houston [14th Dist.] 1996, writ denied). The instruction then defined "adequate warnings and instructions" with five paragraphs addressing duty to warn and, specifically, the learned intermediary doctrine. The first paragraph defined adequate warnings and instructions as those given in a form that could be reasonably expected to catch the attention of a reasonably prudent plastic surgeon. This instruction sufficed to inform the jury that Baxter satisfied its duty to warn if it warned the surgeon to whom it sold the implants. The instruction then stated, however, "A reasonably prudent plastic surgeon is a learned intermediary between the manufacturer and the ultimate user of the product," and it gave three additional instructions regarding the doctrine.

■ The instructions following the "adequate warnings and instructions" paragraph in Question Two were not necessary to instruct the jurors regarding the learned intermediary doctrine; consequently, they are surplusage, expressly prohibited by the Texas Supreme Court in *Acord v. General Motors Corp.*, 669 S.W.2d 111, 116 (Tex.1984).

■ Question Three addressed appellants' DTPA cause of action. Jurors were asked if "Heyer–Schulte Corporation engage[d] in any false, misleading, or deceptive act or practice that was a producing cause of illness or injury . . . [.]" The instructions then defined false, misleading, or deceptive, noting in three paragraphs (1) a manufacturer has no duty to warn directly each patient but must warn a doctor, (2) a seller of the product satisfies its duty to warn by furnishing the warnings to prescribing physicians, and (3) if a manufacturer fails to warn the patient's doctor but the doctor has knowledge of the product's danger, the failure to warn is not the producing cause of plaintiff's

injury. The instructions noted an act is "false, misleading, and deceptive" under the DTPA if the actor fails to disclose information. *See* TEX. BUS. & COM.CODE ANN. § 17.46(b)(23) (Vernon Supp.1997). Here again, the initial instruction assisted the jury in determining whether Baxter failed to warn appellants of the danger. Unfortunately, the additional instructions added nothing to the first, as the jury only needed the first instruction to determine the applicability of the doctrine. This extraneous information was unnecessary to the instruction, and it was error to include the additional instructions in Questions Two and Three.

■ Next, we must consider whether the erroneous instructions were harmful. *See Acord*, 669 S.W.2d at 116. In *Acord*, the court instructed the jury that a manufacturer is not an insurer of the product it designs. *See id.* at 113. In deciding whether this instruction was harmful error, the court explained the case was closely contested, and "to single out for the jury that General Motors was neither an insurer nor a guarantor of a perfect or accident-proof product, which incorporated ultimate safety features, was a comment on the case as a whole." *Id.* In the present case, however, the instructions did not set forth a rule of law that told the jury that liability could not exist. Rather, the instructions instructed jurors about a *potential* situation in which liability will not exist, allowing the jury to determine *whether those circumstances were applicable* to the case they are deciding. As such, the instructions did not constitute a comment on the case. Furthermore, the judge did not offer his opinion, assume the truth of a material fact, exaggerate, minimize, or withdraw relevant evidence. Therefore, the instructions, although unnecessary, were not a comment on the weight of the evidence. *See Moody*, 828 S.W.2d at 244. We overrule point of error two.

We affirm the trial court's judgment.