Affirmed and Memorandum Opinion filed August 8, 2006








Affirmed and Memorandum Opinion filed August 8, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00354-CV

____________

 

STEVEN RACCIATO, Appellant

 

V.

 

AL DAVIES, Appellee

 



 

On Appeal from the 11th
District Court

Harris County, Texas

Trial Court Cause No. 03-17668

 



 

M E M O R A N D U M   O P I N I O N

Appellant Steven Racciato, the plaintiff in this fraud
suit, appeals the trial court=s judgment in favor of appellee/defendant
Al Davies, M.D.  At issue is the preservation of error on evidentiary
complaints and the propriety of the trial court=s rulings on
evidentiary matters. We affirm.








I.  Factual and Procedural
History

Sometime in 2000, appellee Al Davies, M.D., a specialist in
pulmonary and critical care, agreed to act as a AChief Medical
Director@ for CORF
Licensing Services (ACLS@), a licensing
program for the creation and establishment of a special kind of outpatient
rehabilitation facility known as a ACORF,@ an acronym for AComprehensive
Outpatient Rehabilitation Facility.@  In early May
2001, CLS ran an advertisement in the Houston Chronicle.  The ad captured
the attention of appellant Steven Racciato, a health services administrator. 
Racciato visited the company=s website to gather more information.  A
few days later, he flew to Phoenix, Arizona to attend a CLS seminar.  While
there, he received a packet of information which included financial forecasts
and other data suggesting that such a business venture could be profitable. 
The CLS information packet also included a disclaimer that the forecasts are Aestimates of
anticipated revenue and operating expenses@ which Aare based on
various assumptions regarding future events, which are subject to change.@  Several
individuals associated with CLS, including Davies, gave presentations in
Phoenix.  At the time of his presentation, Davies served as Chief of Clinical
Pulmonary and Critical Care Medicine Services and Director of Medical Intensive
Care Unit at The Methodist Hospital and as Co-Chief of Pulmonary and Critical
Care Medicine and associate professor of internal medicine at Baylor College of
Medicine.  Based on his personal observations and other data, Davies discussed
the medical need for outpatient pulmonary rehabilitation and the number of
patients with lung disease.  Davies did not make any guarantees of success but
allegedly stated that the forecasts in the packet of information were Areasonable and
attainable.@ 








Immediately after returning from the seminar, Racciato
called Davies to discuss opening a facility in Houston.  Racciato learned that
Davies would be out of the office until the end of the week.  Without waiting
to speak to him,  Racciato called CLS and asked CLS to send a contract.  On
that same day, Racciato applied for a loan to pay the $125,000 licensing fee. 
The next day, Racciato gave the contract to his lawyer to review.  Racciato
talked with Davies by phone and arranged to further discuss the venture=s potential. 
Racciato claims that, during this conversation, Davies assured him that the
projections were Areasonable and attainable@ and Avery reasonable
and could be anticipated.@  Racciato signed and returned the CLS
contract and never spoke to Davies again.  

Racciato established a CORF and opened it for business in
January 2002, after it became certified by Medicare.  Less than a year later,
after several problems had developed with the facility, Racciato closed the
business.  The following year, in April 2003, he sued Davies, Baylor College of
Medicine, and The Methodist Hospital for damages he allegedly sustained by the
failure of the venture.  

Racciato asserted claims for fraud and negligent
misrepresentation.  The trial court rendered summary judgment dismissing
Racciato=s claims against
Baylor College of Medicine and The Methodist Hospital.  Racciato=s claims against
Davies were tried to a jury that returned a unanimous verdict in favor of
Davies on all claims.

II.  Issues and Analysis

Racciato asserts three issues on appeal, all of which
involve alleged error by the trial court in excluding evidence.  Davies asserts
Racciato=s complaints are
either waived for failure to properly preserve error in the trial court or are
without merit. 

A.      Witnesses
Allegedly Precluded from Testifying

In his first issue, Racciato contends that the trial court
abused its discretion in allegedly Aexcluding
testimony of offered witnesses.@  According to Racciato, these witnesses
would have corroborated his testimony by testifying that they had similar
dealings with Davies.  Racciato bases his complaint on the trial court=s granting of
Davies=s motion in
limine. 








In granting Davies=s motion in
limine, the trial court instructed Racciato and his counsel not to mention
certain matters without first obtaining a ruling from the court outside the
presence and hearing of the jury and to caution each witness to follow the same
instruction.  The trial court prohibited Racciato from offering any evidence of
other CORFs that had failed or ceased to do business Aabsent a showing
that their failure occurred under circumstances substantially similar to those
causing the clinic in question to fail.@

A ruling on a motion in limine is not a ruling on
admissibility and does not preserve error for appellate review.  Hiroms v.
Scheffey, 76 S.W.3d 486, 489 (Tex. App.CHouston [14th
Dist.] 2002, pet. denied) (holding that the granting of a motion in limine does
not preserve error); Waldon v. City of Longview, 855 S.W.2d 875, 880
(Tex. App.CTyler 1993, no writ).  To complain on appeal that the
trial court erred in excluding this evidence, Racciato, among other things, had
to attempt to introduce the evidence in question during trial and obtain an
adverse ruling from the trial court excluding the evidence.  See Bean v.
Baxter Healthcare Corp., 965 S.W.2d 656, 660 (Tex. App.CHouston [14th
Dist.] 1998, no pet.).  When a complaining party fails to call a witness or
obtain a ruling explicitly excluding the witness, error is not preserved.   See
Hiroms v. Scheffey, 76 S.W.3d at 489; Bean, 965 S.W.2d at 660; Ramirez
v. Ramirez, 873 S.W.2d 735, 741 (Tex. App.CEl Paso 1994, no
writ).  Racciato never offered the witnesses at trial and never obtained a
ruling excluding them.  

On the first day of trial, Racciato testified during his
case in chief.  During his direct examination, he mentioned other CORFs that
had failed, drawing an objection from defense counsel.  When the trial court
sustained Davies=s objection to Racciato testifying about
these matters, Racciato did not offer any other witnesses, nor did the trial
court indicate it would exclude other witnesses.  After Racciato finished
testifying during the second day of trial, Racciato called Davies as an adverse
witness.  At the start of the third day of trial, Racciato=s counsel was
still questioning Davies.  Before testimony began on the third day, Racciato
informed the trial court of his desire to make two bills of exception. The
first bill of exception, which related to this issue, states in relevant part
as follows: 








[Racciato=s Counsel]:       Your Honor,
during the plaintiff=s case in chief, the defense
counsel made an objection to the testimony being given regarding the witnesses
that the plaintiff has brought forward, specifically the witnesses named Chuck
Duff, Joe Hall, Art Sanders, and Tom Stevens.  The objection was is [sic] that
their testimony was not relevant.  And I think it was another allegation that
it was prejudical.

What those individuals are going to testify about, they all were
involved in other CORFs and they were going to talk about the representations
that Davies made to them regarding the patient volume for their clinics and
also the rates of reimbursements [sic] that they would receive after they
opened their clinic.  And they all will testify that they inquired about
additional information.  And Davies indicated to them at that time that he
couldn=t give them any additional
information or refer them to any individuals to speak to until after they
signed the contract and paid the $125,000 fee. 

That is the same allegation that my client has here is that Al Davies
made the same representations to him. And all of them will testify that the
representations were false and that the reasons that their facilities failed as
well was because of the lack of patient flow, which  Davies had really
confirmed to them that the patientCthere was patient flow and that they would not have to
worry about the patient flow. 

. . .

And our position is that this testimony is very relevant to our case
and also this evidence would not be prejudicial to the defense. 

[trial court]:                      Very
well.  Does that complete your Bill of Exceptions?

[Mr. Houston]:                  My
first Bill of Exceptions.








At the conclusion of his bill of exception, Racciato did
not seek or obtain a ruling, nor did he attempt to call the witnesses he
identified in his bill.  Under the governing standard,  Racciato failed to
preserve error on this issue.  See  Hiroms, 76 S.W.3d at 489; Bean,
965 S.W.2d at 660; Waldon, 855 S.W.2d at 880.[1] 
Because Racciato did not preserve error, we overrule his first issue. 

B.      Evidence of Conversations
with Other CORF Owners








In his second issue, Racciato contends that the trial court
erred in preventing him during direct examination from testifying about the
details of out-of-court conversations he allegedly had with other owners of
CLS-affiliated CORFs that failed.  During his direct examination, Racciato
attempted to testify as to the content of these conversations.[2]
After Racciato had finished testifying and during Racciato=s presentation of
an informal bill of exceptions, the trial court stated that it would allow
Racciato to testify that he based his decisions on conversations with other
CORF owners but would not permit Racciato to testify as to the details of these
conversations.[3] 









Presuming, without deciding, that Racciato preserved error
as to his second issue, we conclude that the trial court would not have abused
its discretion in concluding that Racciato=s testimony
regarding out-of-court conversations he allegedly had with other owners of
CLS-affiliated CORFs was inadmissible hearsay.  See Gee v. Liberty Mut. Ins.
Co., 765 S.W.2d 394, 396 (Tex. 1989).  Unless expressly excepted or
excluded from the general rule by statute or the rules of evidence, hearsay is
inadmissible.  Tex. R. Evid.
802.  Regardless of the trial court=s reason for
sustaining an objection, we will uphold a ruling excluding evidence if there is
any proper ground that supports the ruling.   See State Bar of Texas v.
Evans, 774 S.W.2d 656, 658 n.5 (Tex.1989). We conclude that the trial court
did not abuse its discretion in preventing appellant from testifying as to the
content of any conversations he had with other CORF owners.  See Interstate
Northborough P=ship v. State, 66 S.W.3d 213,
220 (Tex. 2001) (stating appellate court reviews trial court=s decision to
exclude evidence under an abuse of discretion standard of review). 
Accordingly, we overrule Racciato=s second issue. 

In his third issue, Racciato contends that the trial court
erred in sustaining Davies=s objection to testimony by other CORF
owners and conversations that Racciato may have had with them because Davies
allegedly Aopened the door@ to this evidence
by cross-examining Racciato about whether all of the CORFs in Houston had
failed. 








To preserve error for appellate review of the trial court=s exclusion of
evidence, an appellant must (1) attempt during the evidentiary portion of the
trial to introduce the evidence, (2) if an objection is lodged, specify the
purpose for which the evidence is offered, (3) obtain a ruling from the trial
court, and (4) if the judge rules the evidence inadmissible, make a record,
through a bill of exceptions, of the evidence the party seeks to admit. See
Bean, 965 S.W.2d at 660.  Racciato asserts that, even if testimony by other
CORF owners and by Racciato about his conversations with these owners were
inadmissible, this evidence still should have been admitted because Davies Aopened the door@ to such evidence
based on the way he cross-examined Racciato.  As to testimony by the CORF
owners, as discussed above, Racciato never sought or obtained a ruling by the
trial court as to the admissibility of this evidence, nor did he attempt to
call these witnesses.  Therefore, Racciato did not preserve his third issue as
to this evidence.

Regarding Racciato=s testimony as to
his conversations with other CORF owners, the trial court sustained Davies=s objection and
would not allow Racciato to testify to these matters on direct examination,
before Davies allegedly Aopened the door.@  However, on
appeal, Racciato has not complained of any trial court ruling excluding such
evidence after  Davies allegedly Aopened the door@ during his
cross-examination of Racciato.  Therefore, Racciato did not preserve error in
this regard.  

Even if Racciato had preserved error as to the admission of
this evidence, the record shows that the cross-examination in question was a
response by Davies to Racciato=s testimony on direct examination
indicating that all CORFs in Houston had failed.  Davies=s
cross-examination as to the state of Racciato=s knowledge
regarding CORFs that did not fail is not the same as evidence of Racciato=s conversations
with CORF owners whose businesses did fail, nor is it evidence of a similar
character.  Therefore, even if error had been preserved, the trial court did
not abuse its discretion in determining that  Davies did not Aopen the door.@  See Moore v.
Bank Midwest, N.A., 39 S.W.3d 395,  402 (Tex. App.CHouston [1st
Dist.] 2001, pet. denied) (holding party had not opened door to otherwise
objectionable evidence because party had not introduced the same evidence or
evidence of a similar character).

Racciato
also states that, because Davies=s counsel allegedly painted an
incomplete or misleading picture regarding the Brown Rehabilitation Center and
the Asthma & Lung Clinic, Racciato was entitled to introduce evidence
clarifying or correcting these matters.  However, Racciato never offered any
testimony regarding these centers, nor did he obtain a ruling as to such
evidence or make an offer of proof as to what this testimony would have been. 
Therefore, Racciato did not preserve error as to this argument. See Bean,
965 S.W.2d at 660.  Accordingly, we overrule Racciato=s third issue.  








We affirm the trial court=s judgment.

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed August 8, 2006.

Panel consists of
Justices Hudson, Fowler, and Frost.









[1]   Racciato relies on Durbin v. Dal-Briar Corp.,  871 S.W.2d
263, 270B71 (Tex. App.CEl Paso 1994, writ denied), overruled
in part on other grounds by Golden Eagle Archery, Inc. v. Jackson, 24
S.W.2d 372 (Tex. 2000).  However, in Durbin the trial court unequivocally
ruled during trial that it was excluding the evidence in question.  See id. 
Therefore, Durbin is not on point.





[2]  The following objections were made by Davies during
Racciato=s direct examination: 

 

[Racciato=s
counsel]:       Okay.  Anything else that led you to believe that Al Davies= [sic] representations to you were false?

 

[Racciato]:                     None of the clinics in
Houston were able to make it. Mine wasn=t
the only one that failed. The clinic that Davies had invited me to see, which I
eventually did go down and see, that one failed before mine did.  And I had
spoken with the owner of that clinic very brieflyCI mean, he

 

[Davies=s
counsel]:         Your Honor, may I approach the bench.

 

[Trial court]:                  Yes.  Okay.  Over
here. 

 

[Bench conference off the record]

. . .

 

[Racciato=s
counsel]:       Do you have any personal knowledge of other facilities in
Houston like yours that also failed? 

 

[Racciato]:                     There were three
facilitiesC

 

[Davies=s
counsel]:         ObjectionC

 

[Trial court]:                  Excuse me. Excuse me.
I=ll sustain the objection for grounds previously stated
in the motion in limine and in the sidebar a few minutes ago.

 

[Racciato=s
counsel]:       Your HonorC     

 

[Trial court]:                  Have I made myself
clear . . .?

 

[Racciato=s
counsel]:       You have made yourself clear. 

 





[3]  The following excerpt sets forth the exchange
between Racciato and the trial court in regard to this second bill of
exception.  

 

[Trial court]:                  Please
proceed with your second.

 

[Racciato=s Counsel]:      The second Bill of Exception generally goes
specifically strictly [sic] to some testimony that was also excludedCwas ruled on by the Court based on the defendant=s objections that the plaintiff could not discuss
information regarding the failure of other CORFs [sic] facilities like the one
he owned and operated. 

 

Based on my understanding, the basis of this ruling
was under Texas Rule of Evidence 403. This testimony is very relevant to the
Plaintiff=s case.  This testimony is highly relevant in this
case because it regards a question of why the plaintiff did not contact the
defendant when his business started to fail.  Here the defense has attempted to
persuade the jury to take the position that it was unreasonable for the
plaintiff to have not contacted Davies before he closed the doors to his
clinic. 

 

The plaintiff will be severally [sic] and unduly
prejudiced if he is not permitted to discuss the reasons why he did not contact
the defendant, Al Davies, before he closed the doors to his business. 

 

The plaintiff=s
explanation is that he had discussions with other owners and other facilities,
one of which was located directly in the Medical Center and in which the
defendant, Al Davies, was very involved.  He was informed that the other
facilities were going out of business because they did not acquireC

 

[Trial Court]:                 This is
easy.  I will let your client say that he based his decisions on conversations
with other CORFs [sic] owners. 

 

[Racciato=s Counsel]:      Thank you, Your Honor.

 

[Trial Court]:                 But not the details of
what they said, just he did it based on his conversations with other CORFs
owners.